MARIA R. MANZANO,                          §
                                                              §
                    *Plaintiff*,                     §
                                                              §
v.                                                          §          CIVIL ACTION NO. 4:16-CV-3496
                                                              §
NANCY A. BERRYHILL,                     §
ACTING COMMISSIONER OF THE   §
SOCIAL SECURITY ADMINISTRATION §
                    *Defendant*.                   §

## MEMORANDUM AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Maria R. Manzano ("Ms. Manzano") seeks review of the denial of her request for disability and disability insurance benefits under Title II of the Social Security Act ("the Act"). The Parties consented to have this Court conduct all proceedings in this matter pursuant to 28 U.S.C. § 636(c) and filed cross-motions for summary judgment. ECF Nos. 11, 12, 13. The Court **DENIES** Plaintiff's motion, **GRANTS** the Commissioner's motion, and **DISMISSES** the action **with prejudice**.

## I.        BACKGROUND

Ms. Manzano is a 50 year old woman. R. 153.[1] She last worked as a small parts assembler at Kemlon Products and Development Group from 2006 to 2011. R. 45-46, 159-60. She purportedly left because she had arthritis and difficulty walking. R. 52. On January 24, 2013, Ms. Manzano first filed an application under Title II seeking benefits beginning on April 1, 2011, when the effects of a 1996 hip surgery became disabling and she stopped working. R. 27. She filed another application on the same basis on February 14, 2013. R. 153-54. On May 17, 2013, the Commissioner denied Ms. Manzano's claim. R. 87-90. On May 21, 2013, Ms. Manzano requested reconsideration of her claim, alleging her high blood pressure condition

---

[1] "R." references are to the Administrative Transcript/Record filed by the Commissioner. ECF No. 9.

as an additional basis for her claim. R. 92, 173-77. On June 28, 2013, her claim was again denied. R. 84, 93-95. On July 26, 2013, Ms. Manzano requested a hearing before an Administrative Law Judge ("ALJ"). R. 96.

The ALJ Katherine W. Brown conducted a hearing on December 9, 2014. R. 38-66. Ms. Manzano appeared by telephone. R. 27, 111. A vocational expert, Mr. Michael L. Stinson, also testified. R. 38-66. At the time of the hearing, Plaintiff was 47 years old. R. 45. Although Ms. Manzano originally claimed the onset date of her disability was April 1, 2011, at the hearing she amended this date to November 5, 2012. R. 44. In addition to the effects of her hip surgery and hypertensive blood pressure, Ms. Manzano testified that arthritis of her hands, fingers, and knees; headaches; and antihypertensive medication side effects of dizziness, nausea, and fatigue also contributed to her inability to work. R. 38-66. On March 27, 2015, the ALJ issued a decision, denying Ms. Manzano's application for benefits. R. 21-37.

On May 22, 2015, Ms. Manzano requested the Appeals Council to review the ALJ's decision. R. 17-18. On August 1, 2016, the Appeals Council denied Ms. Manzano's request for review. R. 4-11. On October 24, 2016, the Appeals Council sent Ms. Manzano another letter notifying her that they received and reviewed additional medical evidence regarding her claim, but found no basis to reopen and change the ALJ's decision, thereby rendering the ALJ's decision final. R. 1-3; *see Sims v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the final decision). On November 22, 2016, Ms. Manzano commenced this civil action.

## II.    STANDARD OF REVIEW

The Social Security Act provides that an individual may seek judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party." 42 U.S.C. § 405(g). In performing that review:

> "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner … , with or without remanding the cause for a rehearing. The findings of the Commission … as to any facts, if supported by substantial evidence, shall be conclusive …."

*Id.* Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence; and (2) whether the Commissioner applied the proper legal standards in evaluating the evidence. *See id.* ("The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive…."); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "Substantial evidence" means "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." *Id; Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A reviewing court may not reweigh the evidence in the record, retry the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Id.* At the same time, however, judicial review must not be "so obsequious as to be meaningless." *Id.* (internal quotation marks and citation omitted). The "substantial evidence" standard is not a rubber stamp of the Commissioner's decision. It involves more than a search for evidence supporting the Commissioner's findings. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985); *Singletary v.*

*Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986) ("[T]he substantial evidence test does not involve a simple search of the record for isolated bits of evidence which support the [Commissioner's] decision."). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever in the record fairly detracts from the weight of the evidence supporting the Commissioner's findings. *See Cook*, 750 F.2d at 393. A court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

To qualify for disability benefits, a plaintiff must prove she is disabled. A person is disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(c)(a)(3)(A); *Masterson*, 309 F.3d at 271. The Commissioner follows a five-step inquiry to determine whether a claimant is disabled, asking the following questions in sequence:

(1)     Is the claimant presently engaged in "substantial gainful activity"? (Step One)

(2)     Does the claimant have an impairment or combination of impairments that is "severe"? (Step Two)

(3)     Are the claimant's impairments of a severity that meets or equals the criteria listed in the applicable regulations? (Step Three)

(4)     Considering the claimant's residual functional capacity, do the impairments prevent the claimant from performing past relevant work? (Step Four)

(5)     Considering the claimant's residual functional capacity and his age, education, and work experience, do the impairments prevent the claimant from performing other work? (Step Five)

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a); *Audler v. Astrue,* 501 F.3d 446, 447-48 (5th Cir. 2007). Before moving from Step Three to Step Four, the Commissioner assesses a claimant's residual functional capacity ("RFC") based on "all the relevant medical and other evidence" in the record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most she can still do despite her physical and mental limitations. *Id.* §§ 404.1545(a)(1); 416.945(a)(1). At Step Four, the Commissioner uses the claimant's RFC to determine whether the claimant can still perform past relevant work. The claimant bears the burden of proof on the first four steps of this inquiry. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005). At Step Five, the burden shifts to the Commissioner, who must show that, in light of the claimant's RFC, she can perform other substantial work in the national economy. *Id.* If the Commissioner makes that showing, the burden shifts back to the claimant, who must rebut the Commissioner's finding. *Id.*

### III.     ANALYSIS OF PLAINTIFF'S CHALLENGES TO THE ALJ'S DECISION

The ALJ determined that Ms. Manzano was not disabled at Step Four of the sequential analysis. R. 33. She found Ms. Manzano to have a severe left hip injury, and a combination of numerous other non-severe impairments: hypertension, headaches, temporomandibular joint disorder ("TMJ"), neck pain, obesity, and a knee injury. R. 29-30. However, the ALJ found these impairments do not rise to the level of severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 30. She found Ms. Manzano has the RFC to perform light work, including lifting or carrying up to twenty pounds; standing, walking, or sitting for up to six hours; unlimited ability to push and pull; and no other limitations. R. 30. The ALJ determined Ms. Manzano's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely credible or not fully supported by the medical evidence, and she would still be capable of performing her past work as a small products assembler. R. 33.

Ms. Manzano insists the ALJ erred because: (1) the ALJ's RFC finding is not supported by substantial evidence; (2) the ALJ failed to consider Ms. Manzano's complaints; (3) the ALJ failed to properly develop the record by failing to refer the claim to a vocational rehabilitation agency or for consultative examination; (4) the ALJ gave the non-examining state agency physician's opinions more weight than Plaintiff's treating physician's; and (5) the ALJ used an inaccurate RFC assessment and presented incomplete hypotheticals to the vocational expert.

1.    **Plaintiff claims the ALJ's RFC finding is not supported by substantial evidence.**

Plaintiff claims the ALJ's RFC finding is not supported by substantial evidence and is inconsistent with the record evidence.  Plaintiff argues "[t]he record indicates Plaintiff's impairments could be significantly more limiting than accounted for by the ALJ and restrict her functional abilities to such an extent that she is unable to perform light work on a sustained basis."  Plaintiff's Motion for Summary Judgment ("MSJ") at 5.  Plaintiff contends she testified to "problems sitting, standing, walking, and lifting due to arthritis, knee problems, and continued problems with her left hip after surgery" and "joint pains and knee pain".  Plaintiff's MSJ at 6.  She claims the medical records reflect:

> "a history of joint pains and arthritis for []a few years, which was noted as primarily affecting her knees, as well as a more recent knee injury, and diagnoses of joint pain, knee pain and back pain.  Plaintiff's treating physician opined that due to Plaintiff's hip problems, joint pain, and arthritis, Plaintiff's lifting and carrying, standing and walking, manipulative abilities and environmental exposure is significantly more limited than accommodated by the ALJ."

*Id*. (citations omitted).  The regulations provide guidance on how the ALJ is to assess the Plaintiff's disability claims:

> "In determining whether you are disabled, we consider all of your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of

daily living and your ability to work. However, statements about your pain or other symptoms will not alone establish you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. … However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements. … [W]e will carefully consider any other information you may submit about your symptoms."

20 C.F.R. § 404.1529(a), (c)(2)-(3).

> a. *Plaintiff's medical records reflect her physical examinations were normal and fail to show an impact on daily activities.*

Under the listings of impairments that could be considered disabling, impairments of the musculoskeletal system are marked by "signs of limitation of motion or other abnormal motion of the affected joint(s)" and/or "inability to ambulate [or move] effectively." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.01 *et seq*. Ms. Manzano's medical records do not show such limitations. Nor do the medical records document any such complaints from Plaintiff. To the contrary, all of her physical examinations were essentially normal;[2] she had a normal range of motion in her extremities;[3] normal motor and sensory functions, reflexes, gait, coordination, and

---

[2] June 9, 2011 (R. 233); June 15, 2011 (R. 227); January 30, 2012 (R. 211); April 10, 2012 (R. 273-74); April 30, 2012 (R. 271); May 30, 2012 (R. 267); July 5, 2012 (R. 264); July 7, 2012 (R. 259-60); July 11, 2012 (R. 256); January 14, 2013 (R. 253); January 23, 2013 (R. 250-51); February 22, 2013 (R. 247); March 22, 2013 (R. 244-45); May 3, 2013 (R. 240-41); May 22, 2013 (R. 238); October 21, 2013 (R. 368-89); October 25, 2013 (R. 365-66); December 13, 2013 (R. 357-59); December 30, 2013 (R. 355); February 24, 2014 (R. 351); August 14, 2014 (R. 347). On August 11, 2011, her physical examination showed mild joint tenderness to her right thumb, but was otherwise normal and she had full range of motion. R. 223. Her physical examination on November 27, 2013 showed some pain with range of motion in her neck and left TMJ, but was otherwise normal. R. 361-62. On September 2, 2014, after she fell and hurt her knee, her physical examination showed she had a left leg limp and felt pain with range of motion in her left knee, but was otherwise normal. R. 341, 343.

[3] April 30, 2012 (R. 271); January 14, 2013 (R. 253); January 23, 2013 (R. 250-51); February 22, 2013 (R. 247); March 22, 2013 (R. 244-45).

upright posture;[4] and she was able to independently perform all activities of daily life.[5]  *See, e.g.,*

*Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).  The records do not reflect Plaintiff ever

complained she was unable to perform her daily activities or care for herself.

Plaintiff has not pointed to any evidence in the record that her hip injury, in isolation or in

combination with other conditions, has had such a severe impact on her ability to work that she

cannot perform any work or could only perform sedentary work.  The medical evidence failed to

show any significant limitations on her activities.  *See Hollis v. Bowen*, 837 F.2d 1378, 1387 (5th

Cir. 1988).  Her doctors never directed her to restrict her physical activity; to the contrary, they

advised her to exercise, in part to manage her hypertension.[6]  *Leggett v. Chater*, 67 F.3d 558,

565, 566 (5th Cir. 1995) (finding ALJ's decision to deny disability benefits was supported by

substantial evidence, in part because the claimant's "doctors at no time restricted his physical

activity.").  Ms. Manzano has not provided any explanation, nor do her medical records show

any indication, that her hypertension had "more than a minimal effect on [her] ability to do basic

work activities."  *Roberts v. Colvin*, 946 F.Supp.2d 646, 659-60 (5th Cir. 2013).

She never identified hypertension, TMJ, neck pain, obesity, or her knee impairment

following a recent fall as reasons for leaving any job or not seeking work.  *See id.*  With the

exception of her hip injury and hypertension, Ms. Manzano did not identify any of these other

ailments at the administrative level as a basis for her application for disability benefits.[7]  *See,*

---

[4] June 9, 2011 (R. 233); June 15, 2011 (R. 227); January 14, 2013 (R. 253); January 23, 2013 (R. 250-51); February 22, 2013 (R. 247); March 22, 2013 (R. 244-45); October 21, 2013 (R. 368-69); October 25, 2013 (R. 365-66); November 27, 2013 (R. 361-62).

[5] June 9, 2011 (R. 233); June 15, 2011 (R. 226); August 8, 2011 (R. 222).

[6] June 15, 2011 (R. 227); May 30, 2012 (R. 268); September 2, 2014 (R. 344).

[7] When she initially applied for disability insurance benefits, Ms. Manzano claimed her left hip injury limited her ability to work.  R. 166.  Following her request for reconsideration, she added high blood pressure as a limitation on her ability to work.  R. 173.

*e.g., id.* (finding that the ALJ did not err by finding alleged depression was not severe, in part because claimant did not identify this as an impairment at the administrative level).

<em>b. Plaintiff's conditions were under control with medication.</em>

Ms. Manzano had been prescribed medications for high blood pressure[8] and received Kenalog injections for her hip pain,[9] and her medical records do not show that these treatments were ineffective. *See Hollis*, 837 F.2d at 1384 (ALJ's decision was supported by substantial evidence where medical records were absent of objective evidence indicating the existence of severe pain, claimant had full range of movement, and claimant had been given prescription medication and never complained that such medication was ineffective). Pain that is alleviated by medication is not disabling. *Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990); *see also Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) ("Pain constitutes a disabling condition when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'"); *Kirksey v. Shalala*, 21 F.3d 1109, 1994 WL 171704, at *4 (5th Cir. Apr. 28, 1994) (same); *Wren v. Sullivan*, 925 F.2d 123, 128-29 (5th Cir. 1991) (same). As the ALJ noted, Ms. Manzano testified that aside from her hip injection and Tylenol, she was not taking any prescribed medications for pain. R. 32, 58-59. *Johnson*, 894 F.2d at 686; *see also Falco*, 27 F.3d at 163; *Kirksey*, 1994 WL 171704, at *4; *Wren*, 925 F.2d at 128-29. Medical records do not show she complained of blood pressure medication side effects of dizziness, nausea, or fatigue to any doctor prior to her ALJ

---

[8] April 30, 202 (R. 271); May 30, 2012 (R. 268); July 7, 2012 (R. 260); January 14, 2013 (R. 251); February 22, 2013 (R. 248); May 3, 2013 (R. 241, 240); May 22, 2013 (R. 237, 238); October 25, 2013 (R. 366); November 27, 2013 (R. 362-63); August 14, 2014 (R. 347).

[9] She received Kenalog injections on July 7, 2012 (R. 260), March 22, 2013 (R. 245), November 27, 2013 (R. 362-63), February 24, 2014 (R. 349), and September 2, 2014 (R. 343).

hearing.  There was only one medical visit where she showed symptoms of dizziness,[10] but the medical records do not show this was due to her blood pressure medication.

> c. *Medical records do not support Plaintiff's complaint of a hand or wrist impairment.*

As the ALJ pointed out, there was no objective testing of any "hand impairment or [carpal tunnel syndrome], no EMG/nerve conduction study performed, nor any positive signs (such as Phalen's or Tinel's sign)."  R. 30.  The medical records do not show any complaints of pain in her wrists or hands after two medical visits in June and August 2011.[11]  Thus, there is no showing either that Plaintiff underwent any treatment for her hands or wrists, or that the treatment was ineffective.  Likewise, the records do not show that this impairment prevented her from working, or lasted more than twelve months.  *See* 42 U.S.C. § 1382(c)(a)(3)(A); *Masterson*, 309 F.3d at 271; *Johnson*, 894 F.2d at 686; *see also Falco*, 27 F.3d at 163; *Kirksey*, 1994 WL 171704, at *4; *Wren*, 925 F.2d at 128-29.  In addition, Ms. Manzano never alleged a hand impairment at the administrative level as a basis for her application for disability insurance benefits.[12]  *See, e.g., Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (ALJ did not misapply the standard when it concluded the alleged depression was not an impairment because claimant did not contend this was an impairment at the administrative level).  Having found that her allegation of a hand impairment was not medically determinable, the ALJ did not need to incorporate this into her analysis and determination of Ms. Manzano's RFC.

---

[10] Physical examinations on April 30, 2012, July 7, 2012, October 25, 2013, and November 27, 2013 showed no signs of dizziness.  R. 258, 270-71, 353-54, 364.  The only time any physical examination showed signs of dizziness was on February 24, 2014, when she was also diagnosed with sinusitis and/or pharyngitis.  R. 345, 351.

[11] Medical records show Ms. Manzano only complained of pain in her wrists and/or fingers on two occasions—on June 9, 2011 and August 8, 2011.  R. 222, 232.  On the June 9 visit, the nurse practitioner saw no evidence of weakness, joint tenderness, or muscle atrophy and her physical examination was normal.  R. 233.  During a follow up visit on June 15, 2011, Ms. Manzano's pain had decreased and her physical examination was normal.  R. 226-27, 233.  During Ms. Manzano's August 8 visit, this was the only physical examination in which any medical professional noted mild tenderness of her finger joints.

[12] *See* fn. 7, *supra*.

        *d.     The vocational expert's testimony provided substantial evidence in support of the ALJ's finding.*

The ALJ also appropriately relied on testimony of the vocational expert to determine Ms. Manzano's RFC and that she could perform her past work. *See Masterson*, 309 F.3d at 273 (the ALJ may rely on vocational expert's testimony) (citing *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (same)); *see also Morris v. Bowen*, 864 F.2d 333, 335-36 (5th Cir. 1988). Even though the ALJ recognized that Ms. Manzano has a severe hip injury, she found that Ms. Manzano could perform her past work as a small products assembler, because this work is typically performed at a sedentary[13] to light exertional level. R. 33; *see Hollis*, 837 F.2d at 1386. This, in combination with the medical evidence summarized above, constitutes substantial evidence in support of the ALJ's findings.

        *e.     The ALJ considered all of Plaintiff's impairments.*

Plaintiff argues the ALJ should have considered all impairments, even those that are non-severe, to find they meet the severity of the listings, and that the ALJ failed to do so. Plaintiff's MSJ at 4. However, a close review of the ALJ's decision shows she recognized that Plaintiff had numerous severe and non-severe impairments based on the medical records—even beyond the hip injury and hypertension which were the only impairments Plaintiff alleged in her written applications for disability insurance benefits.[14] In her decision, the ALJ provided a detailed account of Plaintiff's testimony and each of her impairments reflected in the medical records. R. 31-33. The ALJ even departed from the non-examining state agency consultative physicians based on the evidence and testimony presented to her. The two non-examining state agency consultative physicians found Ms. Manzano had the RFC to perform medium work. R. 72, 82.

---

[13] Ms. Manzano testified that her work as a small parts assembler was performed in the sitting position. R. 46.

[14] *See* fn. 7, *supra*.

11

In light of Ms. Manzano's testimony and evidence of her hip impairment, the ALJ found Ms. Manzano actually only had the RFC to perform light work. R. 33. The two non-examining state agency consultative physicians diagnosed Ms. Manzano with only hypertension and osteoarthrosis. R. 69, 79. The ALJ, on the other hand, recognized Ms. Manzano also had headaches, TMJ, neck pain, obesity, and a knee impairment. R. 30. Thus, the ALJ's written decision shows she fully considered the combined effect of Ms. Manzano's impairments.

f. <em>Substantial evidence supported the ALJ's finding that Plaintiff was not as limited as she claimed.</em>

Plaintiff further alleges "[t]here is no evidence in the record indicating that Plaintiff is not as limited as she alleges" and cites *Williams v. Astrue*, 355 F.App'x 828, 832 (5th Cir. 2009). *Williams* is distinguishable. In *Williams*, the ALJ "declined to give controlling weight to the opinions of" the claimant's three treating physicians, each of whom found the claimant was "unable to perform anything but sedentary work." *Id.* at 831. The Fifth Circuit found that, even "[a]ssuming the ALJ was entitled to [do so], there [wa]s still *no* evidence supporting the ALJ's finding that [the claimant] can stand or walk for six hours in an eight-hour work day." *Id.* at 831 (emphasis in original). However, as discussed above, Plaintiff's physical examinations were essentially normal;[15] she had a normal range of motion;[16] normal motor and sensory functions, reflexes, gait, coordination, and upright posture.[17] She did not complain that any impairment prevented her from performing daily activities.[18] Also, both state agency medical consultants found Ms. Manzano has the RFC to perform medium work, including occasionally lifting or carrying up to fifty pounds; frequently lifting or carrying up to twenty-five pounds; standing,

---

[15] *See* fn. 2, *supra*.

[16] *See* fn. 3, *supra*.

[17] *See* fn. 4, *supra*.

[18] *See* fn. 5, *supra*.

walking, or sitting for up to six hours; and no other limitations. R. 70-72, 80-82. This constitutes substantial evidence that supports the ALJ's findings.

Furthermore, the burden is on Plaintiff to show that she is disabled. "The claimant has the burden to prove that she is disabled within the meaning of the Social Security Act." *Anthony*, 954 F.2d at 293. Lack of evidence to the contrary cannot satisfy that burden. "The suffering of some impairment does not establish disability; a claimant is disabled only if she is 'incapable of engaging in any substantial gainful activity.'" *Id.* Other than her own testimony, Plaintiff has failed to point to evidence establishing that she is disabled.

g.   *Substantial evidence supports the ALJ's finding.*

Plaintiff further contends the ALJ cannot "'pick and choose' the evidence from the record … but must consider the entire record" and may not "interpose [her] own 'medical expertise' over that of a physician." Plaintiff's MSJ at 7. The ALJ specifically noted that, in determining Plaintiff's RFC, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence … [and] opinion evidence…." R. 30-31. In her analysis, the ALJ referenced Plaintiff's medical records, work history, testimony, subjective complaints of pain, side effects of medication, her treating physician's medical source statement, and the opinions of the non-examining state agency medical consultants. R. 30-33. "[T]he determination of residual functional capacity is the sole responsibility of the ALJ…. What [claimant] characterizes as the ALJ substituting [her] own opinion is actually the ALJ properly interpreting the medical evidence to determine [Plaintiff's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). Thus, the ALJ did not pick and choose evidence; her opinion is supported by substantial evidence.

## 2. Plaintiff claims the ALJ failed to properly consider her complaints.

Plaintiff contends the ALJ did not consider her subjective complaints "regarding intensity and persistence of limitations and symptoms." Plaintiff's MSJ at 5, 6. A review of the ALJ's decision shows she did consider these and detailed the Plaintiff's testimony of all her pain and symptoms in the decision. R. 32. Indeed, the ALJ found the claimant's medically determinable impairments to be reasonably expected to cause the alleged symptoms, but found her statements concerning the intensity, persistence, and limiting effects not entirely credible. R. 33. It is within the ALJ's scope of authority to find that not all of Plaintiff's testimony was completely credible. The task of weighing the evidence is the province of the ALJ, not of this court. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) (ALJ is tasked with weighing the evidence); *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence…") (quoting *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989)); *see also, e.g., Gray v. Astrue*, No. 1:09-CV-0101-BI, 2011 WL 856941, at *4 (N.D. Tex. Mar. 11, 2011) ("How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence.").

Furthermore, a claimant's subjective complaints of pain must be corroborated by objective medical evidence. *See, e.g., Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) ("The absence in the record of objective factors indicating the existence of severe pain, such as persistent significant limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition justifies the conclusions of the [ALJ]. The record indicates that appellant responded to medication given for pain and that [it] alleviated her pain."); *see also Hollis*, 837 F.2d at 1384; *Kirksey*, 1994 WL 171704, at *4; *Wren*, 925 F.2d at 129. "Subjective evidence need not be credited over conflicting medical evidence." *Anthony*, 954 F.2d at 295.

In addition, the ALJ noted that Plaintiff's complaint of a hand impairment was not supported by any testing or positive signs on physical examination. R. 30. The ALJ also stated that she found Plaintiff's testimony was "inconclusive and at times contradictory." R. 33. Therefore, the ALJ's opinion explains the various reasons she did not consider the Plaintiff's subjective complaints in her testimony to be entirely credible as they were not supported by the medical records. *Falco*, 27 F.3d at 163-64 (ALJ did not make reversible error where the ALJ explained his reasons for rejecting a claimant's complaints of pain). Accordingly, the ALJ's credibility determination is supported by substantial evidence. *See, e.g., Hollis*, 837 F.2d at 1385 (ALJ's decision to credit medical records over claimant's subjective testimony was supported by substantial evidence where "the ALJ supported—on the record—his decision that [claimant's] testimony concerning the severity of her pain was not credible.").

### 3. Plaintiff argues the ALJ failed to properly develop the record.

Plaintiff argues the ALJ failed to develop the record by failing "to refer the claim to a vocational rehabilitation agency" or "to submit the claim for consultative examination." Plaintiff's MSJ at 5, 6. First of all, her complaint that she should have been referred to vocational rehabilitation is meritless, as this is typically reserved for persons who are eligible for benefits and where such treatment may restore ability to work. 20 C.F.R. § 416.1710(b) ("We will make this referral when we find you eligible for benefits or at any other time that we find you might be helped by vocational rehabilitation services."); *Gardner v. Smith*, 368 F.2d 77, 85 (5th Cir. 1966) ("The Social Security Act requires that the disabled individual be referred to State vocational rehabilitation agencies, so that he may be retrained and restored to gainful work.") (citing 42 U.S.C.A. § 422); *see also* 29 U.S.C.A. § 720; Social Security Ruling 82-59.

While it is true the ALJ has a duty to develop the record, "[a]n examination at government expense is not required 'unless the record established that such an examination is

necessary to enable the [ALJ] to make the disability decision.'" *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (quoting *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987)).  The obligation to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  "The ALJ decides whether such evaluation is necessary by examining the record, and the decision is committed to the ALJ's discretion."  *Roberts*, 946 F.Supp.2d at 660; *Wren*, 925 F.2d at 128.  Here, there was ample evidence from which the ALJ was able to make a disability determination, including substantial medical records, Ms. Manzano's testimony, opinions of Ms. Manzano's treating physician and the state agency non-examining medical consultants, and the testimony of a vocational expert.

Moreover, Ms. Manzano did not ask the ALJ for a consultative examination.  She only requested this of the Appeals Council after the ALJ issued her decision.  R. 15-16.  *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (Where a claimant for the first time requests a consultative examination post-hearing, this is the "kind of isolated comment[] which [is] insufficient" to show the need for such examination).  Where a claimant is represented by counsel at the hearing and her counsel fails to request a consultative examination or specify the information requiring further development, "we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record."  *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997); *Tom v. Barnhart*, 147 Fed.App'x 791, 2005 WL 2176073, at *2 (10th Cir. 2005) (same); *Maiorano v. Astrue*, 930 F.Supp.2d 1240, 1251 (D. Colo. 2013) (same); *see also Robinson v. Barnhart*, 183 Fed.App'x 451, 455 (5th Cir. 2006) ("[T]he ALJ's decision not to order a [consultative] evaluation was not required and was properly within the ALJ's discretion because the claimant [never] requested a [consultative]

evaluation….") (internal citations omitted); *Jones*, 829 F.2d at 526 (finding ALJ did not err by not ordering a consultative examination in part because claimant did not request one). Since there was sufficient evidence in the record for the ALJ to make a disability determination, the ALJ had no obligation to order any further consultative examination. *Jones v. Astrue*, 691 F.3d 730, 733-34 (5th Cir. 2012) (ALJ did not have obligation to further develop the record where ample medical records were available from which the ALJ could determine disability).

Even if the ALJ should have developed the record further, reversal is appropriate only if the Plaintiff can show prejudice. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *see also Jones*, 691 F.3d at 733-34. "A mere allegation that beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden." *Jones*, 691 F.3d at 734-35. Plaintiff has made no particularized showing of prejudice, or what other evidence would have been adduced that would have changed the ALJ's decision in her case. Therefore, Plaintiff's complaint that the ALJ failed to develop the record is without merit.

### 4. Plaintiff argues the ALJ erred by giving the non-examining state agency physician more weight than Plaintiff's treating physician.

#### a. The ALJ properly gave less weight to Plaintiff's treating physician.

Plaintiff argues the ALJ erred in giving "some weight" to the non-examining state agency physician and "little weight" to the Plaintiff's treating physician. Plaintiff's MSJ at 5. Generally, a treating physician's opinions should be given "controlling weight" when it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Roberts*, 946 F.Supp.2d at 658. However, an ALJ may give "less weight, little weight, or even no weight" to a treating

physician's statements when they are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Perez*, 415 F.3d at 466 (finding ALJ did not err in giving little weight to treating physician who "never conducted any form of clinical examination on [the claimant], for example, an MRI, X-ray, blood test, or CT scan."); *see, e.g., Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Newton*, 209 F.3d at 455-56; *Kirksey*, 1994 WL 171704, at *4; *Roberts*, 946 F.Supp.2d at 658-59. In *Newton*, the Fifth Circuit held that where there is no opinion evidence of other examining physicians other than the treating physician, the treating physician's opinion may only be given no weight where the ALJ has given consideration to the factors under 20 C.F.R. § 404.1527(d):

> "(1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician."

*Newton*, 209 F.3d at 456. The ALJ is required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Id.*

Here, the ALJ did not reject the opinion of the treating physician, but gave it "little" weight. R. 33. *See Jones*, 821 F.Supp.2d at 852 (ALJ was not required to perform the six-step analysis discussed in *Newton* where he did not entirely reject treating physician's opinion but properly gave it less weight). The ALJ specifically explained that she gave less weight to the treating physician because his opinion was "conclusory" and "unsupported by the evidence." *Perez*, 415 F.3d at 466. The ALJ also noted that the treating physician's records did not show the treatment or impairments to support his opinion. R. 33.

> "[Dr. Duchicela's] finding that the claimant is able to perform a reduced range of sedentary work is not fully supported by the clinical findings, and is largely conclusory in nature given his somewhat conservative treatment. Dr. Duchicela's treatment records fail to note the sorts of treatment and impairments that would be expected to provide such a restricted opinion regarding the claimant's functional capacity. Therefore, his opinion is given little weight…."

R. 33.  The ALJ specified she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p."  R. 31.  Though the ALJ did not explicitly enumerate each factor, she discussed in detail Plaintiff's medical records from Dr. Duchicela and Dr. Duchicela's Medical Source Statement.  R. 32.  Throughout her opinion, the ALJ discussed that Ms. Manzano was treated by Dr. Duchicela "from April 2012 through at least October 2014," summarized Plaintiff's medical history,[19] and noted that Dr. Duchicela was her primary care physician.  R. 32.  The ALJ pointed out there was no objective testing of any "hand impairment or [carpal tunnel syndrome]" and therefore Dr. Duchicela's statements to that effect were "unsupported by medically acceptable clinical, laboratory, or diagnostic techniques." R. 30; *Newton*, 209 F.3d at 456.  It is apparent the ALJ considered all the relevant factors required under *Newton*.  Thus, the ALJ properly gave less weight to the treating physician's conclusory opinions.

b. *Any error the ALJ committed was harmless.*

Even assuming the ALJ's basis for not giving Dr. Duchicela's opinions controlling weight was incorrect or her explanation for doing so was not detailed enough, "any error is harmless as substantial evidence supports the ALJ's RFC and disability determination." *Colgrove v. Colvin*, No. 4:14-CV-798-A, 2015 WL 9582909, at *7 (N.D. Tex. Dec. 14, 2015), *report and recommendation adopted*, No. 4:14-CV-798-A, 2015 WL 9581835 (N.D. Tex. Dec. 30, 2015).  "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Rollins v. Astrue*, 464 F.App'x 353, 358 (5th Cir. 2012) ("[A]ny error in the ALJ's failure to walk explicitly through each factor in § 404.1527(d)(2) was harmless.") (internal citations omitted).  "An error is

---

[19] The ALJ described numerous specific visits by Ms. Manzano to Dr. Duchicela's clinic including in April 2012, February 2013, March 2013, May 2013, October 2013, November 2013, September 2014, and October 2014.  R. 32.

harmless if correcting it would not produce a different result and prejudicial if it would." *Armontrout v. Colvin*, No. 4:14-CV-01031-O-BL, 2016 WL 4400475, at *4 (N.D. Tex. July 25, 2016), *report and recommendation adopted*, No. 4:14-CV-1031-O, 2016 WL 4376281 (N.D. Tex. Aug. 17, 2016); *see also Bentley v. Colvin*, No. 13–CV–4238–P, 2015 WL 5836029, at *10 (N.D. Tex. Sept. 30, 2015) (finding that failure to give controlling weight to opinions of treating physician was harmless error because doing so would not change the RFC determination).

As discussed herein, substantial evidence supports the ALJ's RFC determination. None of the medical records support the treating physician's opinion that Ms. Manzano is as disabled as she claims. Nowhere in the medical records did she complain that she was unable to independently perform her daily activities of living or care for herself. Two state agency medical consultants found Ms. Manzano has the RFC to perform medium work, including occasionally lifting or carrying up to fifty pounds; frequently lifting or carrying up to twenty-five pounds; and standing, walking, or sitting for up to six hours. R. 70-72, 80-82. Even if the ALJ were to give more weight to or re-examine Dr. Duchicela's opinion, Plaintiff has not shown the result would be any different and therefore any error was harmless.

     *c.* *The ALJ properly applied the Rules Regarding Evaluation of Medical Evidence in effect at the time.*

Plaintiff also contends the ALJ disregards the only examining doctor's opinions "without sufficient consideration pursuant to both the old and new regulations regarding evaluation of medical evidence." Plaintiff's MSJ at 5 (citing 20 C.F.R. § 404.1527; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 (Jan. 18, 2017) ("Revisions")). However, as Defendant correctly points out, the Revisions did not go into effect until 2017— after the ALJ made a determination on Ms. Manzano's claim—and these rules do not apply retroactively. Defendant's Reply at 3 (citing *Sierra Medical Center v. Sullivan*, 902 F.2d 388,

392 (5th Cir. 1990)).  The Revisions expressly apply after March 27, 2017.  *See* Revisions.

Because the Revisions are inapplicable, Plaintiff's complaint is without merit.  With regard to the

old Rules as discussed, the ALJ gave proper consideration to Dr. Duchicela's report and

adequately explained her reasons for the weight given.

> ### 5. Plaintiff argues the ALJ made an inaccurate RFC assessment and presented incomplete hypotheticals to the vocational expert.

Plaintiff contends "[t]he ALJ used an inaccurate RFC assessment in conjunction with

vocational expert testimony, to find that Plaintiff could perform her past work" and "the ALJ's

hypothetical question failed to incorporate all of Plaintiff's limitations."  Plaintiff's MSJ at 7.

However, a review of the hearing transcript shows that the ALJ did incorporate Plaintiff's

limitations in the hypotheticals to the extent she believed those limitations were supported by the

record evidence.  The ALJ asked the vocational expert to assume a hypothetical person with

Ms. Manzano's same age, education and work experience who could do light work; lift up to

twenty pounds occasionally; lift and carry up to ten pounds frequently; and stand, walk, sit for up

to six hours; climb ramps or stairs occasionally; never climb ladders, ropes or scaffolds; and

balance, stop, kneel, crouch or crawl occasionally.  R. 61-62.  The vocational expert testified that

such a person could perform Ms. Manzano's past relevant work experience as a small products

assembler.  R. 62.  The ALJ further asked the vocational expert to assume a hypothetical person

with Ms. Manzano's same age, education and work experience who could do sedentary work; lift

up to ten pounds and small items occasionally; stand and walk for about two hours; and sit up to

six hours.  R. 62.  The expert testified that Ms. Manzano's past work would be ruled out to the

extent she ever had to lift more than ten pounds.  R. 62-63.  In response to questions by

Ms. Manzano's attorney, the vocational expert also testified that with additional limitations

including someone who could not frequently handle items with their hands, or who had to take

multiple breaks or lie down frequently during the day, such a person could not do Ms. Manzano's past work.  R. 62-64.

"The ALJ is not required to incorporate limitations into the hypothetical questions to the [vocational expert] that [s]he did not find to be supported in the record."  *Gray*, 2011 WL 856941, at *8 (citing *Morris*, 864 F.2d at 336); *see also Masterson*, 309 F.3d at 273-74 (citing *Boyd*, 239 F.3d at 707); *Roberts*, 946 F.Supp.2d at 662.  For example, the ALJ was not required to include a limitation regarding handling of objects because she found the alleged hand impairment to not be supported by medically acceptable clinical testing.  R. 30.  It is well within the ALJ's province to determine RFC, and to weigh evidence.  Even if the ALJ did not incorporate all of Plaintiff's alleged limitations in the hypothetical, Plaintiff was not prejudiced because she was represented by an attorney who cross-examined the vocational expert and whose questions incorporated additional limitations claimed by the Plaintiff.  *See, e.g., Roberts*, 946 F.Supp.2d at 662.

## IV.    CONCLUSION

For these reasons, this Court finds the ALJ's findings were supported by substantial evidence and the ALJ applied the correct legal standards in making her findings.  Accordingly, the Commissioner's motion for summary judgment is **GRANTED**, and Ms. Manzano's motion for summary judgment is **DENIED**.  Ms. Manzano's claims are **DISMISSED** with prejudice.

Signed on March 28, 2018, at Houston, Texas.

**Dena Hanovice Palermo**
**United States Magistrate Judge**